**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VALINDA JO ELLIOTT,
        *Plaintiff-Appellant,*

v.

WHITE MOUNTAIN APACHE TRIBAL
COURT; HONORABLE JOHN DOE
TRIBAL JUDGE; and WHITE
MOUNTAIN APACHE TRIBE,
        *Defendants-Appellees.*

No. 07-15041

D.C. No.
CV-05-04240-MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued October 22, 2008
Resubmitted May 7, 2009
San Francisco, California

Filed May 14, 2009

Before: Sidney R. Thomas and Susan P. Graber,
Circuit Judges, and Stephen G. Larson,* District Judge.

Opinion by Judge Graber

---

*The Honorable Stephen G. Larson, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Cari M. McConeghy-Harris, Law Offices of David Michael Cantor, P.C., Tempe, Arizona, for the plaintiff-appellant.

Robert C. Brauchi, Tucson, Arizona, and Alexander B. Ritchie, White Mountain Apache Tribe, Whiteriver, Arizona, for the defendants-appellees.

Joe B. Sparks, The Sparks Law Firm, P.C., Scottsdale, Arizona, for the amicus curiae.

---

**OPINION**

GRABER, Circuit Judge:

A tribal court's jurisdiction over nonmembers of the tribe is limited. As a matter of comity, however, federal courts generally decline to entertain challenges to a tribal court's jurisdiction until the tribal court has had a full opportunity to rule on its own jurisdiction. Finding that no exception to that general rule applies here, the district court held that exhaustion of tribal court remedies is required. On de novo review, *Boozer v. Wilder*, 381 F.3d 931, 934 (9th Cir. 2004), we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In June 2002, Plaintiff Valinda Jo Elliott, a non-Indian, was riding in a private vehicle with her employer in the high desert of Arizona, in an area located within the borders of the White Mountain Apache Tribe's reservation. They got lost and ran out of fuel. Unadvisedly, they split up to search for help. Forest rangers rescued Plaintiff's employer but could not locate Plaintiff. For three days, she remained lost and without food, water, or proper clothing.

In her wanderings, Plaintiff saw a forest fire in the distance. On the third day, she spotted a news helicopter recording the fire, which had been named the Rodeo fire. In an understandable effort to attract the helicopter occupants' attention, Plaintiff set a small signal fire.

Fortunately, her idea worked; the helicopter descended and rescued Plaintiff. Unfortunately, her signal fire grew into a substantial forest fire, which was named the Chediski fire. That fire eventually merged with the Rodeo fire and was dubbed, naturally, the Rodeo-Chediski fire. The combined fire burned more than 400,000 acres of land and caused millions of dollars in damage.

The United States Attorney's Office did not prosecute Plaintiff.[1] The tribe, however, brought a civil action against Plaintiff in tribal court, seeking civil penalties and an order of restitution. The tribe brought eight claims against Plaintiff, alleging violations of tribal executive orders, the tribal game and fish code, the tribal natural resource code, and common law negligence and trespass.[2] Plaintiff (the defendant in that action) filed a motion to dismiss for lack of jurisdiction. The tribal trial court denied the motion, holding that it had jurisdiction under the relevant United States Supreme Court cases.

Plaintiff sought interlocutory appellate review of that decision in the tribal appellate court, but the tribal appellate court issued an order denying Plaintiff's request for appellate review. The tribal appellate court held that, under its rules of appellate procedure as promulgated by the tribal legislature, it cannot entertain interlocutory appeals. It therefore dismissed the appeal from a nonfinal order for lack of appellate jurisdiction and returned the case to the tribal trial court for further proceedings.

Plaintiff then brought this action in federal district court. Plaintiff seeks injunctive and declaratory relief against Defen-

---

[1]The United States Attorney's Office did prosecute Leonard Gregg, a part-time forest fire fighter who set the Rodeo fire in an effort to seek work. He was convicted of arson, sentenced to 120 months of imprisonment, and ordered to pay more than $27 million in restitution.

[2]For simplicity, we refer to these sources of tribal law collectively as "tribal regulations."

dants White Mountain Apache Tribe, Honorable John Doe Tribal Judge, and White Mountain Apache Tribal Court, and from conducting any further proceedings in tribal court. The district court held that Plaintiff must exhaust her tribal court remedies and granted Defendants' motion to dismiss. The district court dismissed the action without prejudice to its refiling after Plaintiff has exhausted her tribal court remedies. Plaintiff timely appeals.

## DISCUSSION

### A. *Appellate Jurisdiction*

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 over the district court's final decision that Plaintiff must exhaust her tribal court remedies before refiling. Defendants argue that the district court's order and subsequent judgment are not "final" for purposes of § 1291 because those documents state that the action is dismissed "without prejudice." According to Defendants, the present decision is not "final" because Plaintiff eventually could refile after exhausting her tribal court remedies. We reject Defendants' hypertechnical reading of § 1291.

**[1]** The Supreme Court has explained that its

> cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction."[3]

---

[3]A search for a blanket rule among our own cases on whether dismissals without prejudice are "final" leads one into this "twilight zone," as we

*Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). In turn, we have given the following practical construction: "A ruling is final for purposes of § 1291 if it (1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter." *Nat'l Distribution Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 433 (9th Cir. 1997) (internal quotation marks omitted).

**[2]** We have no trouble concluding that the district court intended that the order be the court's final act in the matter. In *National Distribution Agency*, we expressed frustration with divining a court's intent from ambiguous orders and offered a practical suggestion: "Had the court entered a separate final judgment subsequent to the dismissal order, we would be confident the court intended no further action in the case." *Id.* at 434. Here, the district court followed our advice and helpfully entered a final judgment. The second prong of the finality test, which "focus[es] on the court's intent," *id.*, is therefore met.

**[3]** The first prong of the test, which is separate from the district court's intent, is whether there has been a "full adjudication of the issues." *Id.* at 433. Here, there has been a full adjudication of the issue whether Plaintiff must exhaust tribal court remedies. Unless and until Plaintiff exhausts her tribal court remedies, there is nothing further for the district court to do.

---

have given conclusory and somewhat contradictory statements on the subject. *Compare, e.g.*, *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1085 (9th Cir. 2003) ("A dismissal of an action without prejudice is a final appealable order."), *with Wakefield v. Thompson*, 177 F.3d 1160, 1162 (9th Cir. 1999) ("Although there are exceptions to the rule, dismissals with prejudice generally constitute final orders, while dismissals without prejudice generally do not.").

Defendants counter that there are more issues before the district court than just exhaustion of tribal court remedies. They correctly point out that, *if* Plaintiff exhausts her tribal court remedies and returns to district court, there *will be* other issues on which the district court must rule (i.e., the merits of whether the tribal court has jurisdiction). According to Defendants, those issues remain before the district court now and the order dismissing the action without prejudice is therefore not final.

We reject Defendants' strained understanding of the issues before the district court. First, those additional issues *may* eventually come before the district court, but that is far from certain. It cannot be said that the district court will necessarily have to rule on them (for instance, the tribal appellate court could hold that it lacks jurisdiction or the parties could settle their dispute). Second, those issues are plainly not before the district court *at the present time*. Having dismissed the action, the district court is powerless to rule on the issues that might eventually come before it if a new action is filed in the future. Third, as discussed above, the Supreme Court has directed that appellate courts give a practical construction to the finality requirement. That guidance undermines Defendants' technical argument. We therefore turn to the merits of this appeal.

## B.   *Exhaustion of Tribal Court Remedies*

**[4]** "Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction." *Boozer*, 381 F.3d at 934 (citing *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850-53 (1985)). But a plaintiff must first exhaust tribal court remedies. *See, e.g.*, *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987); *Nat'l Farmers*, 471 U.S. at 856-57; *see also Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008) (applying the doctrine).

**[5]** Plaintiff acknowledges the doctrine generally but argues that it does not apply for two reasons. First, she argues that

she already exhausted her tribal court remedies. In the alternative, she argues that she need not exhaust tribal court remedies because of an exception to the doctrine.

## 1. *Full Exhaustion of Tribal Court Remedies*

Plaintiff argues that she exhausted her tribal court remedies because she sought—and received—a ruling by the tribal trial court on jurisdiction and because she sought a ruling by the tribal appellate court. Plaintiff argues that exhaustion is complete notwithstanding the fact that the tribal appellate court has not yet ruled on the merits of the jurisdictional issue because it lacks authority to accept interlocutory appeals.

This issue is controlled by *Iowa Mutual*. The relevant facts were identical: "Although the Blackfeet Tribal Code establishes a Court of Appeals, see ch. 11, § 1, it does not allow interlocutory appeals from jurisdictional rulings. Accordingly, appellate review of the Tribal Court's jurisdiction can occur only after a decision on the merits." 480 U.S. at 12. The Court in *Iowa Mutual* held that

> [t]he federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts. In this case, the Tribal Court has made an initial determination that it has jurisdiction over the insurance dispute, but Iowa Mutual has not yet obtained appellate review, as provided by the Tribal Code, ch. 1, § 5. Until appellate review is complete, the Blackfeet Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene.

*Id.* at 16-17.

**[6]** Plaintiff makes policy arguments as to why the *Iowa Mutual* rule should be different, but she does not, and cannot, cite a case standing for the proposition that the *Iowa Mutual* rule has been overruled.[4] We therefore hold that Plaintiff has not exhausted her tribal court remedies.

## 2.  *Exceptions to Exhaustion of Tribal Court Remedies*

**[7]** The Supreme Court has outlined four exceptions to the exhaustion rule: (1) when an assertion of tribal court jurisdiction is "motivated by a desire to harass or is conducted in bad faith"; (2) when the tribal court action is "patently violative of express jurisdictional prohibitions"; (3) when "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction"; and (4) when it is "plain" that tribal court jurisdiction is lacking, so that the exhaustion requirement "would serve no purpose other than delay." *Nevada v. Hicks*, 533 U.S. 353, 369 (2001) (internal quotation marks omitted).

Plaintiff makes brief arguments concerning the first three exceptions, none of which is persuasive. The district court correctly held that there is no evidence of bad faith or harassment in the record. Plaintiff has failed to identify—and the record does not reveal—any "express jurisdictional prohibition[ ]" against tribal court jurisdiction. And, as discussed above, Plaintiff will have an adequate opportunity to challenge the tribal court's jurisdiction in the tribal appellate

---

[4]This court recently held that, if the tribal appellate court has a *discretionary* interlocutory appeals process, that is sufficient for purposes of exhaustion. *See Ford Motor Co. v. Todecheene*, 488 F.3d 1215, 1217 (9th Cir. 2007) (order) ("Ford will be deemed to have exhausted its tribal remedies once the Navajo Nation Supreme Court either resolves the jurisdictional issue or denies a petition for discretionary interlocutory review . . . ." ). That holding has no effect on the situation here, because *Iowa Mutual* controls where the tribal court system lacks *any* jurisdiction over interlocutory appeals.

court; she simply must wait until trial is complete. Exhaustion therefore is not "futile."

**[8]** We focus on the fourth exception: whether it is "plain" that the tribal court lacks jurisdiction. If "jurisdiction is 'colorable' or 'plausible,' " then the exception does not apply and exhaustion of tribal court remedies is required. *Atwood*, 513 F.3d at 948.

**[9]** In their unique relationship with the United States, Indian tribes retain a certain amount of "inherent sovereign power." *Montana v. United States*, 450 U.S. 544, 565 (1981). But the Supreme Court has "[s]tress[ed] that Indian tribes cannot exercise power inconsistent with their diminished status as sovereigns." *Id.* For example, tribes cannot exercise their inherent *criminal* jurisdiction over nonmembers. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978), *superseded by statute on other grounds as stated in United States v. Lara*, 541 U.S. 193, 205-07 (2004). The question is murkier with respect to the exercise of a tribe's inherent *civil* jurisdiction over nonmembers. Where, as here, the nonmember is a defendant in the tribal court action, "whether tribal courts may exercise jurisdiction over a nonmember defendant may turn on how the claims are related to tribal lands." *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1132 (9th Cir. 2006) (en banc).

We begin our analysis with *Montana*, "the pathmarking case concerning tribal civil authority over nonmembers." *Strate v. A-1 Contractors*, 520 U.S. 438, 445 (1997). In *Montana*, the Supreme Court addressed whether a tribe may regulate hunting and fishing by nonmembers on reservation lands owned in fee by nonmembers ("fee lands"). 450 U.S. at 557. The Court held that civil regulation of nonmembers on fee lands is governed by "the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.* at 565. But it described two exceptions to that general rule:

To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 565-66 (citations omitted).

The Court held that neither exception applied to hunting and fishing regulations concerning fee lands. *Id.* at 566. But the Court was clear that such regulation is permissible concerning lands belonging to the tribe:

The Court of Appeals held that the Tribe may prohibit nonmembers from hunting or fishing on land belonging to the Tribe . . . and with this holding we can readily agree. We also agree with the Court of Appeals that if the Tribe permits nonmembers to fish or hunt on such lands, it may condition their entry by charging a fee or establishing bag and creel limits.

*Id.* at 557 (citation omitted).

Ownership status of the land also played an important role in the Supreme Court's decision in *Strate*. There, the Court held that tribal courts lack jurisdiction over claims against nonmembers arising out of traffic accidents on a state highway that passes through reservation lands. 520 U.S. at 442. Key to the Court's analysis was its holding that the short

stretch of state highway that passed over reservation lands was "equivalent, for nonmember governance purposes, to alienated, non-Indian land." *Id.* at 454 (footnote omitted). The Court noted "that tribes retain considerable control over non-member conduct on tribal land," *id.*, and expressly declined to consider whether tribal courts would have jurisdiction over accidents occurring on a tribal road, *id.* at 442.

Ownership status of the land is not necessarily dispositive. In *Hicks*, the Supreme Court addressed whether a tribe "can regulate state wardens executing a search warrant for evidence of an off-reservation crime." 533 U.S. at 358. The Court rejected the argument that the tribe has regulatory jurisdiction over nonmembers on reservation lands owned by the tribe simply because of that ownership status: "[T]he existence of tribal ownership is not alone enough to support regulatory jurisdiction over nonmembers." *Id.* at 360. The Court held that the same principles underlying the two *Montana* exceptions also applied to civil regulation of nonmembers on lands owned by the tribe. *Id.* The Court then balanced the tribe's interest in regulating activity by state wardens with the state's interest in investigating off-reservation crimes and held that the state's interest outweighed that of the tribe. *Id.* at 361-65.

In responding to the concurrence's argument that tribal ownership of the land should have played a larger role in the analysis, the majority stated: "[W]e acknowledge that tribal ownership is a factor in the *Montana* analysis, and a factor significant enough that it may sometimes be dispositive. We simply do not find it dispositive in the present case, when weighed against the State's interest in pursuing off-reservation violations of its laws." *Id.* at 370 (alteration, citation, and internal quotation marks omitted).

We have held repeatedly that determining the scope of tribal court jurisdiction is not an easy task. *See, e.g.*, *Smith*, 434 F.3d at 1130 ("Sixteen years ago, we observed that

'[t]here is no simple test for determining whether tribal court jurisdiction exists.' The statement is no less true today." (alteration in original) (quoting *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989))). Here, however, we need not make a definitive determination of whether tribal court jurisdiction exists; we must decide only whether jurisdiction is plausible. *Atwood*, 513 F.3d at 948. We conclude that tribal court jurisdiction is plausible here.

**[10]** The tribe seeks to enforce its regulations that prohibit, among other things, trespassing onto tribal lands, setting a fire without a permit on tribal lands, and destroying natural resources on tribal lands. The Supreme Court has strongly suggested that a tribe may regulate nonmembers' conduct on tribal lands to the extent that the tribe can " 'assert a landowner's right to occupy and exclude.' " *Hicks*, 533 U.S. at 359 (quoting *Strate*, 520 U.S. at 456). The tribal regulations at issue stem from the tribe's "landowner's right to occupy and exclude." Trespass regulations plainly concern a property owner's right to exclude, and regulations prohibiting destruction of natural resources and requiring a fire permit are related to an owner's right to occupy. *See Hicks*, 533 U.S. at 359 (discussing a landowner's right to occupy and exclude); *Strate*, 520 U.S. at 455-56 (same). Accordingly, the tribe's ownership of the land may be dispositive here. *See Hicks*, 533 U.S. at 370 ("[T]ribal ownership is a factor in the *Montana* analysis, and a factor significant enough that it may sometimes be dispositive." (alteration and internal quotation marks omitted)); *id.* at 359 (suggesting strongly that regulations concerning a "landowner's right to occupy and exclude" are permissible against nonmembers).

We reject Plaintiff's argument that the Court's holding in *Hicks* forecloses tribal court jurisdiction. The Court did hold, in *Hicks*, that tribal courts lacked jurisdiction notwithstanding tribal ownership of the land. But the crux of the Court's reasoning was that the state's strong interest in executing its

criminal warrants concerning an off-reservation crime out-weighed the tribe's interest in regulating the activities of "state wardens." *Id.* at 370. The Court expressly stated that its "holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law. We leave open the question of tribal-court jurisdiction over nonmember defendants in general." *Id.* at 358 n.2. Here, of course, Plaintiff cannot assert any state interest to be balanced against the tribe's strong interest in enforcing its regulations governing trespass, prevention of forest fires, and preservation of its natural resources.

[11] Furthermore, the tribe makes a compelling argument that the regulations at issue are intended to secure the tribe's political and economic well-being, particularly in light of the result of the alleged violations of those regulations in this very case: the destruction of millions of dollars of the tribe's natural resources. *See Montana*, 450 U.S. at 566 ("A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."). Accordingly, even if we applied the two *Montana* exceptions without regard to the Supreme Court's instruction that ownership of the land may be dispositive in some cases, we reach the same conclusion: In the circumstances of this case, we cannot say that the tribal court plainly lacks jurisdiction.[5]

---

[5]It is an open question whether a tribe's adjudicative authority is equal to its regulatory authority. *Hicks*, 533 U.S. at 358. It is possible, therefore, that the tribe may have authority to regulate a nonmember's trespass and destruction of natural resources yet lack authority to hale the nonmember into tribal court. That possibility does not affect our conclusion that tribal court jurisdiction is *plausible*. We need not, and do not, resolve the open question whether tribal courts have jurisdiction to the same extent that a tribe may regulate nonmember activity.

## CONCLUSION

We are sympathetic to Plaintiff's concerns about defending her actions in an unfamiliar court system. But, because tribal court jurisdiction is plausible, principles of comity require us to give the tribal courts a full opportunity to determine their own jurisdiction in the first instance.

AFFIRMED.