FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID M. EVANS, an individual;
RON PICKENS, an individual, DBA
P&D Construction, an Idaho sole
proprietorship; SAGE BUILDERS, LP,
an Idaho limited liability partnership,
*Plaintiffs-Appellants*,

v.

SHOSHONE-BANNOCK LAND USE
POLICY COMMISSION; NATHAN
SMALL, as Chairman of the Fort Hall
Business Council; GLENN FISHER;
LEE JUAN TYLER; DEVON BOYER;
TINO BATT; BLAINE J. EDMO;
DARRELL DIXEY, as members of the
Fort Hall Business Council; TONY
GALLOWAY, SR., as Chairman of the
Shoshone-Bannock Land Use Policy
Commission; CASPER APPENAY;
JOHN FRED, as members of the
Shoshone-Bannock Land Use Policy
Commission; ARNOLD APPENEY, as
the Executive Director of the
Shoshone-Bannock Land Use
Department; GEORGE GUARDIPEE, as
an enforcement official of the
Shoshone-Bannock Land Use Policy
Commission; UNKNOWN SHOSHONE-

No. 13-35003

D.C. No.
4:12-cv-00417-
BLW

OPINION

BANNOCK TRIBAL COURT JUDGES, as
Tribal Judicial Officers,
                    *Defendants-Appellees*.

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
November 5, 2013—Portland, Oregon

Filed December 5, 2013

Before: Milan D. Smith, Jr. and Andrew D. Hurwitz,
Circuit Judges, and James C. Mahan, District Judge.[*]

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable James C. Mahan, District Judge for the U.S. District Court for the District of Nevada, sitting by designation.

## SUMMARY[**]

### Indian Law

Reversing in the district court's denial of a motion for preliminary injunction and dismissal of an action seeking to enjoin tribal court proceedings, the panel held that the Shoshone-Bannock Tribes lacked the power to regulate the land use of the plaintiff, a nonmember who owned land in fee simple within the Fort Hall Reservation.

The panel held that the plaintiff was not required to exhaust tribal remedies before bringing suit in federal court because the tribal court plainly lacked jurisdiction. The panel held that because the plaintiff was an owner of non-Indian fee land, the Tribes' efforts to regulate him were presumptively invalid under *Montana v. United States*, 450 U.S. 544 (1981), and an exception for the regulation of nonmember activity that directly affects a tribe's political integrity, economic security, health, or welfare did not apply. The panel reversed the judgment of the district court and remanded the case for further proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Aaron N. Thompson (argued), May, Rammell & Thompson, CHTD, Pocatello, Idaho, for Plaintiffs-Appellants.

Mark A. Echo Hawk (argued), Echo Hawk Law, Pocatello, Idaho, for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

In this appeal, we consider whether the Shoshone-Bannock Tribes plausibly have the authority to regulate the land use of David Evans, a nonmember of the Tribes, who owns land in fee simple within the Fort Hall Reservation.[1] Acknowledging the general rule that tribes may not regulate nonmember conduct on such "non-Indian fee land," the district court nevertheless held that the Tribes had a plausible basis for asserting jurisdiction. The district court therefore rejected Evans' attempt to enjoin tribal court proceedings, ruling that Evans must first exhaust tribal remedies. Because, contrary to the district court's conclusion, the Tribes plainly lack the power to regulate Evans' conduct, we reverse the judgment of the district court and remand for further proceedings.[2]

---

[1] For ease of exposition, we refer to Plaintiffs-Appellants collectively as Evans. We refer to Defendants-Appellees collectively as the Tribes.

[2] In a memorandum disposition filed contemporaneously with this opinion, we affirm the district court's denial of Evans' motion to strike the majority of the Tribes' evidentiary submissions.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff-Appellant David Evans inherited land in Pocatello, a city in Power County, Idaho. Evans' land is located within the Fort Hall Reservation, the home of the Shoshone-Bannock Tribes. Although his property is within the borders of the reservation, Evans is not a member of the Tribes, and he owns the land in fee simple.[3]

In 2012, after obtaining a building permit from Power County, Evans began constructing a single-family residence on his property. He hired Plaintiff-Appellant Sage Builders to build the house, and Sage Builders in turn retained subcontractors, including P&D Construction, to provide materials and construction services.

On April 13, 2012, Defendant-Appellee George Guardipee, the Compliance Officer for the Tribes' Land Use Policy Commission, requested that Evans submit a building permit application to the Tribes. Guardipee further requested that Evans pay the Tribes' permit fees, and asked Evans to ensure that all of his contractors and subcontractors obtain

---

[3] "Thanks to the Indian General Allotment Act of 1887, 24 Stat. 388, as amended, 25 U.S.C. § 331 *et seq*., there are millions of acres of non-Indian fee land located within the contiguous borders of Indian tribes." *Plains Commerce Bank v. Long Family Land & Cattle*, 554 U.S. 316, 328 (2008) (citing *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 648, 650 n.1 (2001)). The Tribes argue that this history is not directly relevant, as the Fort Hall Reservation was allotted into fee simple parcels in 1889, rather than under the more widely applicable 1887 Act. But they do not dispute that Evans owns his land in fee simple. And they cite no authority suggesting that the specific allotment-era statute under which alienation of tribal land to nonmembers became possible is relevant to tribal jurisdiction.

business licenses and pay fees to the Tribes. Evans declined, and continued building his home without tribal approval.

On May 16, 2012, Guardipee arrived on Evans' land and demanded that all work on the property cease. The workers then left Evans' property.

The next day, representatives from the Tribes posted a Stop Work Notice on Evans' property. The Tribes also sent Evans a Tribal Notice of Violation/Cease and Desist Order, which instructed Evans to contact the Tribes immediately. Evans complied, and called Defendant-Appellee Tony Galloway, Sr., the Chairman of the Land Use Policy Commission. According to Evans, Galloway warned him that the Commission would fine him $500 per day if he ignored the stop work order.

In July 2012, the Commission served Evans with a summons and complaint naming him and his builders as defendants. The complaint, filed in Shoshone-Bannock Tribal Court, accused Evans and the builders of violating the Tribes' Land Use Policy Ordinance, the Guidelines implementing the Ordinance, and the Tribes' Business License Act.

On August 10, 2012, Evans, Sage Builders, and Ron Pickens (the owner of P&D Construction) brought suit in the United States District Court for the District of Idaho, seeking a declaration that the tribal court lacked jurisdiction and an injunction barring further tribal court proceedings against them. The Tribes moved to dismiss, arguing that Evans was required to exhaust tribal remedies before bringing suit in federal court. Evans opposed the motion to dismiss and moved for a preliminary injunction.

On December 20, 2012, the district court granted the Tribes' motion to dismiss and denied Evans' motion for a preliminary injunction.  The district court concluded that, because Evans failed to exhaust tribal remedies, his federal suit was premature.  In so holding, the district court reasoned that tribal authority to regulate Evans' land use was plausible, so the tribal court did not plainly lack jurisdiction.  Evans timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.[4]   We review a district court's denial of a preliminary injunction for abuse of discretion.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1157 (9th Cir. 2007).  We review a district court's underlying factual findings for clear error, and we review its legal conclusions de novo.  *Id.*  "Whether exhaustion of tribal remedies is required is a question of law reviewed de novo." *Boozer v. Wilder*, 381 F.3d 931, 934 (9th Cir. 2004) (citing *Boxx v. Long Warrior*, 265 F.3d 771, 774 (9th Cir. 2001)).

## DISCUSSION

## I.  Exhaustion of Tribal Remedies

"Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction." *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 846 (9th Cir. 2009) (quoting *Boozer*, 381 F.3d

---

[4] The district court's denial of Evans' motion for a preliminary injunction merged into the final judgment. *See SEC v. Mount Vernon Mem'l Park*, 664 F.2d 1358, 1361–62 (9th Cir. 1982).

at 934).   Before bringing suit in federal court, however, a
non-Indian generally must first exhaust tribal remedies.
*Elliott*, 566 F.3d at 846; *see also Nat'l Farmers Union Ins.
Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850–53 (1985)
(describing exhaustion requirement).

There is no dispute that Evans failed to exhaust tribal
remedies.  But the exhaustion requirement is not absolute.
"Exhaustion is prudential; it is required as a matter of comity,
not as a jurisdictional prerequisite."  *Boozer*, 381 F.3d at 935
(citations omitted).   To this end, the Supreme Court has
recognized four exceptions to the exhaustion requirement:
"(1) when an assertion of tribal court jurisdiction is
'motivated by a desire to harass or is conducted in bad faith';
(2) when the tribal court action is 'patently violative of
express jurisdictional prohibitions'; (3) when 'exhaustion
would be futile because of the lack of an adequate
opportunity to challenge the tribal court's jurisdiction'; and
(4) when it is 'plain' that tribal court jurisdiction is lacking,
so that the exhaustion requirement 'would serve no purpose
other than delay.'"  *Elliott*, 566 F.3d at 847 (quoting *Nevada
v. Hicks*, 533 U.S. 353, 369 (2001) (internal alteration
omitted)).

Evans contends that he is not required to exhaust tribal
remedies because the tribal court plainly lacks jurisdiction.
To determine whether tribal court jurisdiction is plainly
lacking, we analyze whether such "jurisdiction is colorable or
plausible . . . ."  *Elliott*, 566 F.3d at 848 (quoting *Atwood v.
Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948 (9th
Cir. 2008) (internal quotation marks omitted)).   The
plausibility of tribal court jurisdiction depends on the scope
of the Tribes' regulatory authority, as "a tribe's adjudicative
jurisdiction does not exceed its legislative jurisdiction."

*Plains Commerce*, 554 U.S. at 330 (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997)).

## II.  Plausibility of Tribal Court Jurisdiction

"[T]ribes do not, as a general matter, possess authority over non-Indians who come within their borders . . . ." *Plains Commerce*, 554 U.S. at 328 (citing *Montana v. United States*, 450 U.S. 544, 565 (1981)); *see also Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 939 (9th Cir. 2009) ("As a general rule, tribes do not have jurisdiction, either legislative or adjudicative, over nonmembers, and tribal courts are not courts of general jurisdiction.").  Particularly relevant here, "[t]his general rule restricts tribal authority over nonmember activities taking place on the reservation, and is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians—what [the Supreme Court has] called 'non-Indian fee land.'" *Plains Commerce*, 554 U.S. at 328 (quoting *Strate*, 520 U.S. at 446).

Because Evans is an owner of non-Indian fee land, the Tribes' efforts to regulate him are "presumptively invalid." *Plains Commerce*, 554 U.S. at 330 (quoting *Atkinson*, 532 U.S. at 659).  In order to regulate Evans' land use, the Tribes must show that at least one of two "limited" exceptions described in *Montana v. United States* applies. *Atkinson*, 532 U.S. at 647.  Under the first exception, tribes may regulate "nonmembers who enter consensual relationships with the tribe or its members . . . ." *Strate*, 520 U.S. at 446.  Under the second exception, tribes may regulate nonmember "activity that directly affects the tribe's political integrity, economic security, health, or welfare." *Id.*

The Tribes do not argue that they may regulate Evans' activities under *Montana*'s "consensual relationships" exception.**[5]** Thus, in order to regulate Evans' land use, the Tribes must show that Evans' "conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Plains Commerce*, 554 U.S. at 329–30 (quoting *Montana*, 450 U.S. at 566). The Tribes face a formidable burden in this respect, because "with only 'one minor exception, [the Supreme Court has] never upheld under *Montana* the extension of tribal civil authority over nonmembers *on non-Indian land*.'" *Plains Commerce*, 554 U.S. at 333 (quoting *Hicks*, 533 U.S. at 360 (emphasis in original)). That "minor exception" is *Brendale v. Confederated Tribes & Bands of Yakima Indian Nation*, 492 U.S. 408 (1989), in which the Supreme Court "permitted a tribe to restrain particular uses of non-Indian fee land through zoning regulations." *Plains Commerce*, 554 U.S. at 333 (emphasis omitted). But neither *Brendale*, nor the second *Montana* exception more generally, plausibly supports tribal jurisdiction here.

## A. Tribal Authority to Zone Non-Indian Fee Land

In *Brendale*, the Supreme Court held, by a six to three margin, "that the Yakima Indian Nation lacked authority to zone nonmembers' land within an area of the Tribe's reservation open to the general public . . . ." *Strate*, 520 U.S. at 447 n.6. "The Court also held, [five] to [four], that the Tribe retained authority to zone fee land in an area of the

---

**[5]** The Tribes suggest in passing that jurisdiction may be plausible over Evans' builders because they chose to "engage in commercial activities in Indian country[.]" But the Tribes ignore the fact that the property at issue is non-Indian fee land.

reservation closed to the general public. No opinion garnered a majority." *Id.* Whereas four Justices concluded that the Yakima Tribe lacked any authority to zone non-Indian fee land, *Brendale*, 492 U.S. at 430–31 (opinion of White, J.), three Justices determined that the Tribe could zone fee land in all areas of the reservation. *Id.* at 458–59 (opinion of Blackmun, J.). Declining to join either of these opinions, Justice Stevens, joined by Justice O'Connor, "concluded that the Tribe retained zoning authority over nonmember land only in the closed area." *Strate*, 520 U.S. at 447 n.6 (citing *Brendale*, 492 U.S. at 443–44 (opinion of Stevens, J.)). Justice Stevens' opinion is controlling. *See Marks v. United States*, 430 U.S. 188, 193 (1977).

Under *Brendale*'s controlling opinion, "the Tribes' power to zone each parcel of land turned on the extent to which the Tribes maintained ownership and control over the areas in which the parcels were located." *Hicks*, 533 U.S. at 390 (citing *Brendale*, 492 U.S. at 438–44 (opinion of Stevens, J.)). The Supreme Court recently emphasized the narrow scope of *Brendale*, explaining that the decision merely authorized tribal zoning "on nonmember fee land isolated in 'the heart of a closed portion of the reservation' . . . ." *Plains Commerce*, 554 U.S. at 333–34 (quoting *Brendale*, 492 U.S. at 440 (opinion of Stevens, J.) (internal alteration omitted)).

To determine whether *Brendale* supports tribal court jurisdiction, we consider the character of the area in which Evans' property is located and the nature of Evans' project. Tribal zoning authority over non-Indian fee land is plausible only if (1) there is an arguable similarity between the area surrounding the fee land and the closed portion of the reservation described in *Brendale*; and (2) the intended use of the fee land would place the character of the surrounding area

of the reservation "in jeopardy." *Atkinson*, 532 U.S. at 658 (quoting *Brendale*, 492 U.S. at 443 (opinion of Stevens, J.)).

The area surrounding Evans' property bears no resemblance to the closed portion of the reservation in *Brendale*. At the time *Brendale* was decided, only three percent of the closed area of the Yakima reservation was owned in fee simple. *Brendale*, 492 U.S. at 438 (opinion of Stevens, J.). The closed area was mostly forested, and the county government maintained no roads traversing this portion of the reservation. *Id.* at 438–39 (opinion of Stevens, J.). The Yakima Tribe carefully limited and monitored the activities of nonmember visitors in the closed area, requiring all such nonmembers to obtain a permit before entering. *Id.* at 439 (opinion of Stevens, J.). Notably, "[t]ribal police and game officers enforce[d] the courtesy permit system by monitoring ingress and egress at four guard stations and by patrolling the interior of the closed area." *Id.* (citing *Yakima Indian Nation v. Whiteside,* 617 F. Supp. 750, 738 (E.D. Wash. 1985)).

The controlling opinion in *Brendale* acknowledged that "logging operations, the construction of [Bureau of Indian Affairs] roads, and the transfer of a relatively insignificant amount of land in the closed area unquestionably ha[d] diminished the Tribe's power to exclude non-Indians from that portion of its reservation . . . ." *Brendale*, 492 U.S. at 441 (opinion of Stevens, J.). Nevertheless, the closed area "remain[ed] an undeveloped refuge of cultural and religious significance, a place where tribal members may camp, hunt, fish, and gather roots and berries in the tradition of their culture." *Id.* (internal quotation omitted). Against this backdrop, Justice Stevens held that "the Tribe has authority to prevent the few individuals who own portions of the closed

area in fee from undermining its general plan to preserve the character of this unique resource by developing their isolated parcels without regard to an otherwise common scheme." *Id.*

The area surrounding Evans' property on the Fort Hall Reservation is dramatically different. To begin with, the area contains many residential properties owned and inhabited by nonmembers. Additionally, the City of Pocatello operates the Pocatello Municipal Airport on non-Indian fee land a short distance from Evans' parcel. The area is traversed by a public road (Government Road), and includes farmland and a gravel pit.[6] In short, the area of the Fort Hall Reservation near Evans' property does not in any way resemble the "undeveloped refuge" in which the *Brendale* Court permitted tribal zoning of non-Indian fee land. *Brendale*, 492 U.S. at 441 (opinion of Stevens, J.).

The Tribes' observation that the percentage of non-Indian fee land in the Fort Hall Reservation is relatively low does not change this analysis. To the contrary, the Supreme Court has directly rejected the argument "that Indian tribes enjoy broad authority over nonmembers wherever the acreage of non-Indian fee land is minuscule in relation to the surrounding tribal land." *Atkinson*, 532 U.S. at 658. Rather, the Court has explained that "the judgment in *Brendale* turned on both the closed nature of the non-Indian fee land and the fact that its development would place the entire area

---

[6] The Tribes assert that "no right of way exists for Government Road," and that "unauthorized use of Government Road constitutes a trespass on the Fort Hall Reservation." But the Power County Highway Division, not the Tribes, maintains this road, and it is freely accessible to the public. In any event, the transfer of tribal land to nonmembers "must implicitly grant the purchaser access to that property." *Brendale*, 492 U.S. at 437 (opinion of Stevens, J.).

'in jeopardy.'" *Id.* (quoting *Brendale*, 492 U.S. at 443 (opinion of Stevens, J.)).

In *Brendale*, the Court approved tribal efforts to prevent a nonmember from constructing a large complex consisting of "recreational summer cabins, on-site sewage disposal systems, and interior access roads . . . ." *Brendale*, 492 U.S. at 440 (opinion of Stevens, J.). In view of the undeveloped character of the surrounding area, the controlling opinion found that the proposal would undermine the Yakima Tribe's "general plan to preserve the character" of the closed area. *Id.* at 441 (opinion of Stevens, J.). Here, by contrast, Evans merely seeks to construct a single-family house in an area that has already seen comparable development. Accordingly, *Brendale* does not provide a plausible basis for tribal court jurisdiction.[7]

## B. Tribal Authority to Prevent Environmental Harms

In addition to their specific reliance on *Brendale*, the Tribes contend more generally that jurisdiction is plausible because Evans' conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566. To this

---

[7] We decline the parties' invitation to compare the area surrounding Evans' land to the open area of the reservation described in *Brendale*. The Supreme Court's rejection of tribal zoning power over fee land in the open area reflects the rule that tribes generally lack authority to regulate nonmember activity on non-Indian fee land. *See Plains Commerce*, 554 U.S. at 328. By contrast, the Court's authorization of tribal zoning of non-Indian fee land in the closed area represents a "minor exception" to that rule. *Id.* at 333 (quoting *Hicks*, 533 U.S. at 360). Accordingly, courts must analogize to the closed area described in *Brendale* to determine whether tribal zoning authority over fee land is plausible.

end, the Tribes identify a variety of alleged problems flowing from Evans' construction project, including: (1) groundwater contamination; (2) improper disposal of construction debris; and (3) increased risk of fire. The district court concluded that these concerns plausibly support tribal jurisdiction under *Montana*. We disagree.

"The burden rests on the tribe to establish one of the exceptions to *Montana*'s general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land." *Plains Commerce,* 554 U.S. at 330 (citing *Atksinson*, 532 U.S. at 654). For a tribe to have authority over such nonmember conduct, "[t]he conduct must do more than injure the tribe, it must 'imperil the subsistence' of the tribal community." *Plains Commerce*, 554 U.S. at 341 (quoting *Montana*, 450 U.S. at 566)). Thus, "*Montana*'s second exception 'does not entitle the tribe to complain or obtain relief against every use of fee land that has some adverse effect on the tribe.'" *Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1064–65 (9th Cir. 1999) (quoting *Brendale*, 492 U.S. at 431 (opinion of White, J.)). Rather, the challenged conduct must be so severe as to "fairly be called catastrophic for tribal self-government." *Plains Commerce*, 554 U.S. at 341 (internal quotation and citation omitted).

The Tribes fail to show that Evans' construction of a single-family house poses catastrophic risks.[8] The Fort Hall Reservation has long experienced groundwater

---

[8] The Tribes identify several other purported risks, including substandard construction practices and degradation of nearby hunting grounds and fisheries. But these concerns are speculative, and the Tribes fail to provide specific evidence showing that tribal regulation of Evans' modest construction project is necessary to avert catastrophe.

contamination, and the Tribes proffer no evidence showing that Evans' construction would meaningfully exacerbate the problem. Further, the Tribes' generalized concerns about waste disposal and fire hazards are speculative, as they do not focus on Evans' specific project. To the extent the district court concluded otherwise, its findings are clearly erroneous. *See Turtle Island Restoration Network v. U.S. Dep't of Commerce,* 672 F.3d 1160, 1165 (9th Cir. 2012) ("A finding of fact is clearly erroneous 'if it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" (quoting *Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1087 (9th Cir. 2011))). Accordingly, the tribal court plainly lacks jurisdiction, and Evans need not exhaust tribal remedies.

## C. Other Sources of Tribal Authority

Finally, the Tribes argue that they may regulate Evans' conduct under (1) the Fort Bridger Treaty of 1868, 15 Stat. 673 (1868); (2) delegated authority from Congress; (3) the Organic Act of the Territory of Idaho, 12 Stat. 808, 809 (1863); (4) the Idaho Constitution; and (5) the Tribes' Land Use Policy Ordinance. The Tribes further contend that they may regulate Evans' land use because Power County purportedly lacks the authority to do so, and because "no case categorically bars the assertion of Tribal jurisdiction in this case." But these arguments ignore the crucial fact that Evans' property is non-Indian fee land.

It is well settled that congressional approval of a treaty does not endow a tribe with jurisdiction over nonmembers on fee land. *See Montana*, 450 U.S. at 554, 561. Rather, "once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it." *Plains Commerce*, 554 U.S. at 328

(citing *Cnty. of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation*, 502 U.S. 251, 267–68 (1992)). And none of the federal laws cited by the Tribes expressly grants them authority over nonmembers on non-Indian fee land.

Finally, the Organic Act of the Territory of Idaho and the Idaho Constitution provide no basis for tribal jurisdiction here because they limit state authority over "*Indian lands*," not non-Indian fee land. *State v. Allan*, 607 P.2d 426, 430 (Idaho 1980) (citing Idaho Const. Art. 21, § 19) (emphasis added); *see also Knox v. State ex rel. Otter*, 223 P.3d 266, 268 (Idaho 2009) ("The act of Congress of March 3, 1863, organizing the Territory of Idaho, provides that it shall not embrace within its limits or jurisdiction any territory *of an Indian tribe* without the latter's assent . . . ." (quoting *Harkness v. Hyde*, 98 U.S. 476, 477 (1878)) (emphasis added)). Indeed, the Supreme Court held long ago that the government of Idaho could regulate non-Indian activity within the borders of the Fort Hall Reservation. *See Utah & N. Ry. Co. v. Fisher*, 116 U.S. 28, 33 (1885).[9] Accordingly, we reject the Tribes' additional arguments for asserting jurisdiction over Evans' land use.

## III.    Preliminary Injunction

The district court denied Evans' motion for a preliminary injunction because it erroneously concluded that tribal jurisdiction was plausible. The district court did not consider, however, whether Evans demonstrated a likelihood of irreparable harm, or whether the balance of equities and the

---

[9] The Tribes cite no case law supporting their argument that "the Power County boundary drawn over the top of the Reservation is invalid," and we have found none.

public interest favor injunctive relief.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Notwithstanding Evans' overwhelming likelihood of success on the merits, "[a] preliminary injunction is an extraordinary remedy never awarded as of right."  *Id.* at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). Because "[t]he grant of a preliminary injunction is a matter committed to the discretion of the trial judge," *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984), we remand this case to the district court for consideration of the remaining *Winter* factors in the first instance.[10]

## CONCLUSION

Because the Tribes plainly lack the authority to regulate Evans' construction of a single-family house on non-Indian fee land, the district court erred in concluding that exhaustion is required.  We therefore reverse the judgment of the district

---

[10] The Tribes argue that Evans' claims against certain tribal officials were properly dismissed because Evans does not make any specific factual allegations against them.  The Tribes also assert that these Defendants are immune from suit.  But "tribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law." *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007) (quoting *Burlington N. R.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991), *overruled on other grounds by Big Horn Cnty. Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000)).  Because Evans alleges that these Defendants exceeded their authority under federal law, the Tribes' arguments are without merit.

court and remand this case for further proceedings.[11] Defendants-Appellees shall bear costs on appeal. *See* Fed. R. App. P. 39(a)(4).

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

---

[11] For the reasons set forth in the memorandum disposition filed contemporaneously with this opinion, we affirm the district court's denial of Evans' motion to strike.