**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GRAND CANYON SKYWALK
DEVELOPMENT, LLC, a Nevada
limited liability company,
*Plaintiff-Appellant*,

v.

'SA' NYU WA INCORPORATED, also
named as 'Sa' Nyu Wa: a tribally-
charted corporation established
under the laws of the Hualapai
Indian Tribe; GRAND CANYON
RESORT CORPORATION, a tribally-
charted corporation established
under the laws of the Hualapai
Indian Tribe; RICHARD WALERMA,
SR.; WYNONA SINYELLA; RUBY
STEELE; CANDIDA HUNTER; BARNEY
ROCKY IMUS; WAYLON HONGA;
CHARLES VAUGHN, SR., each
individuals and members of the
Hualapai Tribal Council; WANDA
EASTER; JACI DUGAN, each
individuals and Hualapai Indian
Tribe employees; DUANE
YELLOWHAWK, Honorable,
individual and judge of the Hualapai
Tribe Court,
*Defendants-Appellees*.

No. 12-15634

D.C. No.
3:12-cv-08030-
DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
October 19, 2012—San Francisco, California

Filed April 26, 2013

Before: Raymond C. Fisher, Richard C. Tallman,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tallman

**SUMMARY**[*]

**Tribal Court Jurisdiction**

Affirming the district court's judgment in an action concerning a dispute over a revenue-sharing contract between a Nevada corporation and a tribally chartered corporation of the Hualapai Indian Tribe for the building and operation of the Grand Canyon Skywalk, the panel held that the Nevada corporation must exhaust tribal court remedies before proceeding in federal court on its claims challenging the Tribe's authority to condemn its intangible property rights in the contract.

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel concluded that the bad faith and futility exceptions to the exhaustion requirement did not apply. It held that where a tribal court has asserted jurisdiction and is entertaining a suit, the tribal court must have acted in bad faith for exhaustion to be excused; bad faith by a litigant instituting the tribal court action will not suffice. The panel held that the submitted evidence did not establish that the tribal court operated in bad faith or was controlled by the tribal council in its decision making. The panel also affirmed the district court's conclusion that the evidence did not meet the narrow futility exception, which applies where exhaustion would be futile because of the lack of adequate opportunity to challenge the tribal court's jurisdiction.

The panel held inapplicable the exhaustion exception for cases in which the tribal court plainly lacks jurisdiction. The panel stated that the main rule of *Montana v. United States*, 450 U.S. 544 (1981), that generally Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, was unlikely to apply to the facts of this case. The panel held that the district court correctly relied upon *Water Wheel Camp Recreation Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011), which recognizes that a tribe's inherent authority over tribal land may provide for regulatory authority over non-Indians on that land without the need to consider *Montana.* Moreover, even if the tribal court were to apply *Montana*'s main rule, the Nevada corporation's consensual relationship with the tribal corporation, or the financial implications of their agreement, likely would place the case squarely within one of *Montana*'s exceptions and allow for tribal jurisdiction.

**COUNSEL**

Troy A. Eid (argued) and Jennifer Weddle, Greenberg Traurig, LLP, Denver, Colorado; Tami Denise Cowden and Mark Tratos, Greenberg Traurig, LLP, Las Vegas, Nevada; and Pamela Overton, Greenberg Traurig, LLP, Phoenix, Arizona, for Plaintiff-Appellant.

Jeffrey David Gross (argued), Paul Kipp Charlton, Glen Hallman and Christopher W. Thompson, Gallagher & Kennedy, P.A., Phoenix, Arizona, for Defendants-Appellees.

---

**OPINION**

TALLMAN, Circuit Judge:

We must once again address the subject of tribal court jurisdiction over disputes arising when non-Indians choose to do business in Indian country. Underlying this jurisdictional question is a multi-million dollar development contract involving the building and operation of a tourist destination overlooking one of the world's great wonders, the Grand Canyon. The Skywalk is a glass-bottomed viewing platform suspended 70 feet over the rim of the Grand Canyon with the Colorado River flowing thousands of feet below.

Grand Canyon Skywalk Development, LLC ("GCSD"), a Nevada corporation, entered into a revenue-sharing contract with Sa Nyu Wa ("SNW"), a tribally chartered corporation of the Hualapai Indian Tribe. When a dispute arose over the contract, GCSD sued SNW in Hualapai Tribal Court to compel arbitration. While arbitration proceeded, the Hualapai Tribal Council exercised eminent domain and

condemned GCSD's intangible property rights in the contract, which practically speaking left SNW, as a tribal corporation, in contract with the Hualapai Tribe.

GCSD responded by filing suit against SNW in the United States District Court for the District of Arizona seeking declaratory judgment that the Hualapai Tribe lacked the authority to condemn its intangible property rights and injunctive relief. The district court denied the temporary restraining order ("TRO") to enjoin SNW based on the principle of comity and required GCSD to exhaust all possible tribal court remedies before proceeding in federal court. The district court relied on our decision in *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011), and also concluded there was not a sufficient basis to apply the bad faith or futility exceptions. For the same reasons cited by the district court, we affirm.

# I

On December 31, 2003, GCSD and SNW entered into a revenue-sharing "Development and Management Agreement" to establish a glass bridge tourist overlook and related facilities known as the Skywalk on remote tribal land. In addition, GCSD agreed to provide shuttle services from locations outside the reservation to the Skywalk. The parties signed an amended agreement on September 10, 2007, and later created a trust to manage the shared revenues on March 10, 2010.

GCSD filed a complaint in Hualapai Tribal Court on February 25, 2011, seeking to compel SNW to engage in arbitration pursuant to their agreement's dispute resolution clause. SNW objected, but nonetheless participated, and on

February 1, 2012, an American Arbitration Association arbitrator set deadlines for a joint prehearing schedule and resolution of any outstanding discovery disputes, including depositions and subpoenas.

As arbitration proceeded, the Hualapai Tribal Council passed Resolution No. 20-2011 on April 4, 2011, enacting § 2.16 of the Hualapai Law and Order Code, which codified the Tribe's power to invoke eminent domain to condemn property for public use. On February 7, 2012, acting under § 2.16, the tribal council passed Resolution No. 15-2012 to acquire "GCSD's contractual interest in the Skywalk Agreement under the power of eminent domain and to do all things necessary to accomplish th[at] purpose." The Hualapai Tribal Court followed by issuing a TRO against GCSD, and SNW filed a Declaration of Taking with the tribal court.

GCSD responded on two fronts: it filed an expedited motion for a TRO in district court to stop the eminent domain proceedings, and it opposed the taking in Hualapai Tribal Court. After multiple hearings, the district court denied GCSD's TRO by invoking the principles of comity and ordered GCSD to exhaust tribal court remedies prior to review in federal court. GCSD timely appealed on March 22, 2012.

## II

We have jurisdiction under 28 U.S.C. § 1292(a)(1) as an appeal from denial of injunctive relief. Although TROs are not typically appealable interlocutory orders, we may review a TRO that "possesses the qualities of a preliminary injunction" where the "district court holds an adversary hearing and the basis for the court's order was strongly

challenged." *Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1067 (9th Cir. 2010). We review questions of tribal court jurisdiction and exhaustion of tribal court remedies de novo and factual findings for clear error. *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1130 (9th Cir. 2006); *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 938 n.1 (9th Cir. 2009).[1]

### III

SNW argues, for the first time on appeal, that collateral estoppel bars GCSD from raising similar jurisdictional questions on appeal that it raised before the district court in an earlier case dismissed without prejudice. Because GCSD's argument fails on the merits, we need not consider either whether SNW waived this argument by failing to raise it in the district court or whether collateral estoppel applies here.

### IV

Federal law has long recognized a respect for comity and deference to the tribal court as the appropriate court of first impression to determine its jurisdiction. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856–57 (1985); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15–16 (1987); *Burlington N. R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1244–47 (9th Cir. 1991). As support for this

---

[1] While appellate review of a district court's denial of a TRO is typically for an abuse of discretion, the question of tribal jurisdiction and exhaustion of tribal remedies takes priority in this case and provides the appropriate standard of review.

premise, the Supreme Court cites: (1) Congress's commitment to "a policy of supporting tribal self-government and self-determination;" (2) a policy that allows "the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge;" and (3) judicial economy, which will best be served "by allowing a full record to be developed in the Tribal Court." *Nat'l Farmers*, 471 U.S. at 856.

We have interpreted *National Farmers* as determining that tribal court exhaustion is not a jurisdictional bar, but rather a prerequisite to a federal court's exercise of its jurisdiction. *Crow Tribal Council*, 940 F.2d at 1245 n.3. "Therefore, under *National Farmers*, the federal courts should not even make a ruling on tribal court jurisdiction . . . until tribal remedies are exhausted." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989). However, there are four recognized exceptions to the requirement for exhaustion of tribal court remedies where:

> (1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) the action is patently violative of express jurisdictional prohibitions; (3) exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction; or (4) it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule.

*Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1065 (9th Cir. 1999) (citations omitted). GCSD raises bad faith,

futility, and plain lack of tribal governance in support of its position.  We review each of these exceptions in turn but ultimately conclude that none offers a sufficient basis to avoid exhaustion of tribal court remedies in this case.

## V

The Supreme Court has suggested that a federal court need not wait until tribal remedies have been exhausted to consider a case if "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith." *Nat'l Farmers*, 471 U.S. at 856 n.21 (internal citation omitted).  *Black's Law Dictionary* defines bad faith as "[d]ishonesty of belief or purpose."  149 (9th ed. 2009). *National Farmers* used the passive voice and neither we, nor the Supreme Court, have expressly stated *who* must act in bad faith for it to apply.  We now hold that where, as here, a tribal court has asserted jurisdiction and is entertaining a suit, the tribal court must have acted in bad faith for exhaustion to be excused.  Bad faith by a litigant instituting the tribal court action will not suffice.

## A

The source of the bad faith exception in the tribal court context is *National Farmers*, 471 U.S. at 856 n.21, which imported it from *Juidice v. Vail*, 430 U.S. 327, 338 (1977). In *Juidice*, the state court issued a commitment order, and the defendant was arrested after he failed to attend a deposition, appear for a hearing, and pay a fine.  *Id*. at 329–30.  Rather than appeal his case in state court, he filed a 42 U.S.C. § 1983 claim in district court.  *Id*. at 328–30.  Upon review, the Supreme Court held that a federal court must abstain from making a determination during a state proceeding based on

the principle of comity unless the proceeding was motivated by a desire to harass or was conducted in bad faith. *See id*. at 334–38. The Court looked to the *proceeding* and the court overseeing that proceeding to make its determination. *See id.* at 338 (holding that the bad faith exception "may not be utilized unless it is alleged and proved that [the State Courts] are enforcing the contempt procedures in bad faith or are motivated by a desire to harass"). The defendant there alleged bad faith by the plaintiffs, which the Court explicitly held insufficient to trigger the exception. *See id.* (holding that the exception was not triggered because "[w]hile some paragraphs of the complaint could be construed to make [bad faith] allegations as to the creditors, there are no comparable allegations with respect to appellant justices who issued the contempt orders"). Analogizing to this case, it must be the Hualapai Tribal Court that acts in bad faith to avoid the requirement to exhaust tribal court remedies.

Additionally, a broader interpretation would unnecessarily deprive tribal courts of jurisdiction and violate the principles of comity that underlie the exhaustion requirement. A party would need only allege bad faith by the opposing party, or a third party, to remove the case to federal court. Comity principles require that we trust that our tribal court counterparts can identify and punish bad faith by litigants as readily as we can. GCSD's proposed reading of the exception would swallow the rule and undermine the Supreme Court's general principle of deference to tribal courts.

GCSD points to two Ninth Circuit cases in support of its broader interpretation of who may act in bad faith to trigger the exception, but neither is dispositive of the issue. In *A&A Concrete, Inc. v. White Mountain Apache Tribe*, the

appellants argued that enforcement of a statutory scheme had been in bad faith. 781 F.2d 1411, 1417 (9th Cir. 1986). We rejected the argument because there was no evidence of bad faith in the record. *See id.* Similarly, in *Atwood v. Fort Peck Tribal Court Assiniboine*, we considered and rejected the bad faith exception in a single sentence by stating that "[t]here has been no showing that [the defendant] asserted tribal jurisdiction in bad faith or that she acted to harass [the plaintiff]." 513 F.3d 943, 948 (9th Cir. 2008). Although both of these decisions looked beyond the tribal court for their bad faith analysis, the topic received only a cursory review and was quickly dismissed. Neither case defined the scope of bad faith, and more importantly, neither case applied the bad faith exception. Ultimately, where a tribe has an established judicial system as here, the interpretation most faithful to *National Farmers* is that it must be the tribal court that acts in bad faith to exempt the party from exhausting available tribal court remedies.

### B

The facts of this case do not support a finding of bad faith on the part of the tribal court. GCSD urges us to determine that the *Hualapai Tribal Court Evaluation*,[2] the proffered testimony of its author, Executive Director Joseph Myers, and other evidence proved that the tribal court and tribal council were inextricably intertwined such that bad faith by the tribal council could be imputed to the tribal court. However, the proffered evidence does not conclusively support that claim. The majority of the statements in the *Evaluation* are broad generalizations or guiding principles. Two specific findings

---

[2] The tribal council commissioned the *Evaluation* prepared by the National Indian Justice Center.

directly refute GCSD's contentions: (1) "no interviewee stated that there was any direct interference in court matters by tribal council members;" and (2) "[t]he judiciary is separate and apart from the tribal council."  Additionally, the tribal council's act of bringing in an external auditing organization lends credibility to the tribal court system as a whole.

GCSD challenges the district court's refusal to hear testimony from the *Evaluation*'s author, Mr. Myers.  "A district court's evidentiary rulings should not be reversed absent clear abuse of discretion and some prejudice." *S.E.C. v. Jasper*, 678 F.3d 1116, 1122 (9th Cir. 2012) (citation and internal quotation marks omitted).  "For us to reverse a decision as an abuse of discretion, we must have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted).

The district court did not abuse its discretion when it denied GCSD's request to introduce Mr. Myers' testimony.  GCSD requested an emergency evidentiary hearing but failed to notify the court of its intention to introduce witness testimony.  As a result, SNW did not have an opportunity to subpoena defense witnesses.  Out of fairness to SNW and due to the urgency of a TRO proceeding, the court accepted only Mr. Myers' written report.  The court reviewed the published *Evaluation* and left open the possibility of an additional evidentiary hearing if necessary.

Ultimately, the court's denial of the admission of his actual testimony was not an abuse of discretion because the

*Evaluation* documented Mr. Myers' findings and provided a balanced review of the Hualapai judiciary. When considered together, the submitted evidence does not establish that the tribal court operated in bad faith or is controlled by the tribal council in its decision making.

## VI

Futility is also a recognized exception to the requirement to exhaust court tribal remedies. Where "exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction," a party is excused from exhausting claims in tribal court. *Red Wolf*, 196 F.3d at 1065. Generally, this exception applies narrowly to only the most extreme cases. *See Johnson v. Gila River Indian Cmty.*, 174 F.3d 1032, 1036 (9th Cir. 1999) (two-year delay called into question the possibility of tribal court remedies); *Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 622 (8th Cir. 1997) (exhaustion not required where there was no functioning tribal court).

GCSD has failed to show that the Hualapai Tribal Court does not offer an adequate and impartial opportunity to challenge jurisdiction. Although Hualapai Law and Order Code § 2.16(K) originally precluded a judge pro tem from hearing condemnation cases, the tribal court remedied this separation of powers issue by invalidating that section and appointing a neutral pro tem judge to hear this case. The Hualapai adjudicatory process has continued, as evidenced by submitted tribal court and tribal court of appeals orders. Both

parties to this appeal are participating in those proceedings.[3] The tribal court determined it has jurisdiction to review the condemnation act under the catchall section of the Hualapai Law and Order Code, § 3.1(d), which states: "the Tribal Court may be guided by common law as developed by other Tribal, federal or state courts" where no law is directly on point. Even the *Evaluation* offered as evidence by GCSD as proof of futility includes statements such as, "[t]he Hualapai Tribal Court is a functional, established system with court procedures" and "[t]he judiciary is separate and apart from the tribal council."

The submitted evidence supports the district court's finding that the tribal court operates independently from the tribal council and the evidence presented does not meet the narrow futility exception. GCSD is actively litigating its case in Hualapai Tribal Court, contradicting its argument that it has not had an "adequate opportunity to challenge the court's jurisdiction." *Red Wolf*, 196 F.3d at 1065.

## VII

Finally, we turn to the third issue raised on appeal, whether the tribal court plainly lacked jurisdiction over this case. The Supreme Court stated in *Strate v. A-1 Contractors* that where "it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from

---

[3] Appellees' outstanding Second Motion to Supplement the Record, Oct. 5, 2012, ECF No. 38, and Appellant's outstanding Motion to Supplement the Record, Oct. 15, 2012, ECF No. 39, are granted. Submitted materials have been reviewed and were considered in this decision.

such conduct."   520 U.S. 438, 459 n.14 (1997) (*Montana* "described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation." *Id*. at 446).  We hold that this *Strate* exception does not apply here to  deny the tribal court of its initial jurisdiction.

The tribal court does not plainly lack jurisdiction because *Montana*'s main rule is unlikely to apply to the facts of this case.  Furthermore, the district court correctly relied upon *Water Wheel*, which provides for tribal jurisdiction without even reaching the application of *Montana*.  Even if the tribal court were to apply *Montana*'s main rule, GCSD's consensual relationship with SNW or the financial implications of the agreement likely place it squarely within one of *Montana*'s exceptions and allow for tribal jurisdiction.[4]

## A

*Montana v. United States*, 450 U.S. 544 (1981), is "the pathmarking case concerning tribal civil authority over nonmembers." *Strate*, 520 U.S. at 445.  But as the district court properly determined, a tribe's inherent authority over tribal land may provide for regulatory authority over non-Indians on that land without the need to consider *Montana*. *See Water Wheel*, 642 F.3d at 804–05.  As a starting point, we

---

[4] Although GCSD raises *mobilia sequuntur personam* as another means to preclude tribal jurisdiction in the first instance, its argument conflates the interlocutory jurisdictional question with the merits of the condemnation action.  This opinion focuses on the jurisdictional question, and we need not determine the situs of the contract to render our decision.

recognize "the long-standing rule that Indian tribes possess inherent sovereign powers, including the authority to exclude, unless Congress clearly and unambiguously says otherwise." *Id*. at 808 (citation omitted).

In *Water Wheel*, a non-Indian corporation entered into a lease agreement with a group of tribes for the development and operation of a recreational park and marina on tribal land along the Colorado River. *Id*. at 805. Under the contract Water Wheel collected fees from users and made payments to the tribes. *Id*. After a dispute arose, Water Wheel stopped making payments and refused to vacate the premises after the lease ended. *Id*. The tribes filed suit in tribal court, and Water Wheel moved to dismiss the case, arguing the court did not have jurisdiction under *Montana*. *Id*. at 805–06. We held that "where the non-Indian activity in question occurred on tribal land, the activity interfered directly with the tribe's inherent powers to exclude and manage its own lands, and there are no competing state interests at play, the tribe's status as landowner is enough to support regulatory jurisdiction without considering *Montana*," *id*. at 814, and unless a limitation applies, adjudicatory jurisdiction, as well. *Id*. at 814–17.

Despite GCSD's attempts to distinguish *Water Wheel*, the factual differences do not diminish the reasoning or the application of the decision here. Just as in *Water Wheel*, GCSD agreed to develop and manage a tourist location on tribal land in exchange for a fee. It is the impressive beauty of the tribal land's location that is the valuable centerpiece of this controversy. Tourists visit the Skywalk because it provides unparalleled viewing of the Grand Canyon, a location to which the Tribe has the power to limit access through its inherent sovereignty and the right to exclude.

*Water Wheel* is instructive because there, just as here, it was access to the valuable tribal land that was the essential basis for the agreement.

Although this case involves an intangible property right within a contract, rather than a leasehold as in *Water Wheel*, the contract in this case equally interfered with the Hualapai's ability to exclude GCSD from the reservation.  The dispute between GCSD and SNW over the management of the Skywalk property resulted in the Hualapai taking drastic measures: passing an ordinance to condemn GCSD's property rights, purporting to substitute the Tribe in the place of GCSD to carry out the management of the overlook, and spending more than two years in litigation.  With the power to exclude comes the lesser power to regulate.  *South Dakota v. Bourland*, 508 U.S. 679, 689 (1993).  Where a tribe has regulatory jurisdiction and interests, such as those at stake here, it is also likely to have adjudicatory jurisdiction as the district court concluded.  *See Water Wheel*, 642 F.3d at 814–16.

GCSD argues the Tribe waived its inherent sovereignty when it established SNW to manage the Skywalk contract, but that is not the case.  *Merrion v. Jicarilla Apache Tribe* cautioned against conflating a tribe's agreement to contract with a waiver of tribal sovereignty.  455 U.S. 130, 144–48 (1982).  "To presume that a sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power in a commercial agreement turns the concept of sovereignty on its head . . . ."  *Id*. at 148.  GCSD relies on *Merrion* where the Court stated "[w]hen a tribe grants a non-Indian the right to be on Indian land, the tribe agrees not to exercise its ultimate power to oust the non-Indian as long as the non-Indian

complies with the initial conditions of entry." *Id*. at 144. But that argument goes to the merits of the condemnation action and not to the jurisdictional question before us now. Read in its entirety, *Merrion* holds that unless expressly waived "in unmistakable terms" within the contract, a tribe retains its inherent sovereignty, and as such, the tribe may have jurisdiction. *Id*. at 148.

**B**

Furthermore, although the main rule in *Montana v. United States* is that a tribal court lacks regulatory authority over the activities of non-Indians unless one of its two exceptions apply, this case is not *Montana*. *Montana*, 450 U.S. at 565–66. *Montana* considered tribal jurisdiction over nonmember activities on *non-Indian* land, *held in fee simple*, within a reservation. *Id*. at 547, 565–66. The land underlying this case, however, is federal Indian land held in trust for the Hualapai Tribe. The dispute arose out of an agreement related to the development, operations, and management of the Skywalk, an asset located in Indian country.

With the exception of *Nevada v. Hicks*, 533 U.S. 353 (2001), the Supreme Court has applied *Montana* "almost exclusively to questions of jurisdiction arising on non-Indian land or its equivalent." *Water Wheel*, 642 F.3d at 809. When deciding whether a tribal court has jurisdiction, land ownership may sometimes prove dispositive, but when a competing state interest exists courts balance that interest against the tribe's. *See Hicks*, 533 U.S. at 360, 370. Here, as the dispute centers on Hualapai trust land and there are no obvious state interests at play, the *Hicks* exception is unlikely to require *Montana*'s application. At the very least, it cannot be said that the tribal court plainly lacks jurisdiction.

**C**

Even if *Montana* applied, either of its two recognized exceptions could also provide for tribal jurisdiction in this case. The first exception allows "Indian tribes [to] retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations" where nonmembers enter into "consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." 450 U.S. at 565. The second exception exists where the conduct of a non-Indian "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id*. at 566. Additionally, tribal laws may be fairly imposed on nonmembers if the nonmember consents, either expressly or through his or her actions. *See Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337 (2008).

GCSD voluntarily entered into a contract with SNW by signing an agreement to develop and manage the Skywalk and both parties were represented by counsel. The scope of the agreement was extensive, lasting more than eight years at the time the case was filed in the district court, and with agreed upon possible damages of up to $50 million for early termination. The parties reviewed and signed an amended agreement and entered into a subsequent trust years later. While the agreement was between GCSD and SNW, and not the Tribe directly, the first exception applies equally whether the contract is with a tribe or its members. *Montana*, 450 U.S. at 565. Given the consensual nature of the relationship between the parties and the potential economic impact of the agreement, the tribal court could conclude it has jurisdiction over SNW's dispute with GCSD under either of *Montana*'s exceptions.

Moreover, GCSD should have reasonably anticipated being subjected to the Tribe's jurisdiction. *See Plains Commerce*, 554 U.S. at 338. Article 2, § 2.1 of the original GCSD/SNW agreement specifies that the "Manager [GCSD] hereby accepts its appointment as the developer and manager of the Project and agrees to develop, supervise, manage, and operate the Project . . . in compliance with all applicable federal, [*Hualapai*] *Nation*, state, and local laws, ordinances, rules, and regulations, including all employment laws and regulations." (emphasis added). Thus, the necessary corollary would be that if GCSD operated in violation of the Tribe's laws, it could be subjected to its jurisdiction. GCSD consented to be bound by this language when it signed the agreement with SNW.

## VIII

The judgment of the district court requiring exhaustion of tribal court remedies prior to proceeding with the action in federal court is **AFFIRMED**.